Citation Nr: 1528200 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 10-47 354 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Salt Lake City, Utah


THE ISSUES

1. Entitlement to service connection for left ankle ligament tear with residuals.

2. Entitlement to an initial compensable disability rating for patella spurring of the right knee.

3. Entitlement to an initial compensable disability rating for patella spurring of the left knee.

4. Entitlement to an initial compensable disability rating for hypertension.


REPRESENTATION

Appellant represented by: Disabled American Veterans




WITNESSES AT HEARING ON APPEAL

The Veteran and his wife


ATTORNEY FOR THE BOARD

R.N. Poulson, Counsel


INTRODUCTION

The Veteran served on active duty from November 1988 to November 2008.

This matter comes before the Board of Veterans' Appeals on appeal from a January 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina, which, in pertinent part, denied service connection for left ankle ligament tear with residuals and granted service connection for patella spurring of the right and left knees and hypertension, assigning noncompensable ratings for each.

The Veteran and his wife testified before the undersigned Veterans Law Judge at a videoconference hearing in June 2011. A transcript of the hearing has been associated with the claims file.

In March 2014, the Board denied service connection for left ankle ligament tear with residuals, and denied compensable disability ratings for the knees and hypertension. The Veteran filed an appeal to the United States Court of Appeals for Veterans Claims (Court). Per a February 2015 Joint Motion for Remand (JMR) and Court Order, the Board's decision was remanded for compliance with instructions in the JMR. 

The issues of entitlement to service connection for a left ankle ligament tear with residuals and entitlement to increased ratings for patella spurring of the left and right knees are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

Hypertension is manifested by a history of diastolic pressure predominantly less than 100, current diastolic pressure predominantly less than 100, systolic pressure predominantly less than 160, and continuous medication required for control.


CONCLUSIONS OF LAW

The criteria for an initial compensable rating for hypertension have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.104, Diagnostic Code (DC) 7101 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. The Veterans Claims Assistance Act of 2000 (VCAA)

In a March 2014 decision, the Board determined that all requisite duties to notify and assist had been met, to include assisting the Veteran by providing him with an adequate VA examination. In that decision, the Board found that a November 2008 VA examination was adequate for adjudication purposes. The examiner reviewed the claims file, considered the Veteran's medical history and current symptomatology, and described in full the manifestations of his hypertension. 

Notably, the parties' JMR includes no reference to any deficiency in this regard with respect to the hypertension claim. Furthermore, after the matter was returned to the Board, the Veteran was given 90 days to submit any additional argument or evidence. In light of this history and the evidence and arguments of record, the Board finds that all requisite duties to notify and assist have been met in this case.
II. Analysis

The Veteran's hypertension is rated as noncompensably disabling pursuant to 38 C.F.R. § 4.104, DC 7101, for hypertensive vascular disease (hypertension and isolated systolic hypertension). This DC provides a 60 percent rating if the diastolic pressure is predominantly 130 or more; a 40 percent rating if the diastolic pressure is predominantly 120 or more; a 20 percent rating if the diastolic pressure is predominantly 110 or more or systolic pressure is predominantly 200 or more; and a 10 percent rating if the diastolic pressure is predominantly 100 or more or systolic pressure is predominantly 160 or more, or minimum evaluation for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for control.


Having carefully reviewed the evidence of record, the Board finds that the Veteran's hypertension has been manifested by required continuous medication for control, a history of diastolic pressure predominantly less than 100, current diastolic pressure predominantly less than 100, and systolic pressure predominantly less than 160. The Board has combed through the dozens and dozens of blood pressure readings contained in the STRs. As correctly noted in the JMR, the Veteran's diastolic pressure was recorded as 100 or higher on six occasions during his 20-year career. Five of those readings were taken years before the claim of service connection was received. Similarly, the Veteran's diastolic pressure was recorded as 160 or higher on six occasions. Five of those readings were taken years before the claim of service connection was received. During a November 2008 VA examination, the Veteran's blood pressure was recorded as 142/86, 137/87, and 137/83. The examiner indicated that the Veteran was taking medication for his hypertension. Further, the Veteran testified in June 2011 that his blood pressure is normally "136 over probably 80 or 90." See Hearing Transcript at 14. Therefore, the medical evidence clearly reflects that the Veteran's diastolic pressure has predominantly been less than 100, and systolic pressure has predominantly been less than 160. These findings are consistent with the currently assigned noncompensable rating for hypertension, and a compensable rating is not warranted.

The Board has considered the assertions by the Veteran pertaining to the severity of his hypertension. He is competent to attest to the blood pressure readings he obtained at home. However, the Board observes that the Veteran's reported home blood pressure readings do not meet the criteria for a compensable rating, and the Board concludes that the medical findings on examination are of greater probative value than the Veteran's allegations regarding the severity of his hypertension because objectively measuring blood pressure requires the use of a sphygmomanometer or blood pressure meter. 

The Board has considered whether an extra-schedular rating is warranted. 
There has been no showing that the Veteran's disability picture is so exceptional that it could not be contemplated adequately by the applicable schedular rating criteria discussed above for evaluating hypertension. A comparison between the level of severity and symptomatology of the Veteran's hypertension with the established criteria shows that the rating criteria reasonably describe the Veteran's disability level and symptomatology. Specifically, the evidence shows that the Veteran's hypertension is well-controlled with medication, and he has not described any unusual features associated with his service-connected hypertension. In addition, the evidence of record does not show that his hypertension has caused marked interference with any employment, as he has worked throughout the appeal period, or that he has been frequently hospitalized for hypertension. Accordingly, a referral for extra-schedular consideration is not warranted.

The Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

Last, an inferred claim for a total disability rating based on individual unemployability (TDIU) under Rice v. Shinseki, 22 Vet. App. 447 (2009) has been considered. The Veteran has worked full-time throughout the appeal period. He does not contend, nor does the evidence show, that he is unemployable as a result of his service-connected hypertension. Therefore, any inferred TDIU claim is inapplicable.

For all the foregoing reasons, the Board finds that the most probative and credible evidence does not support the assignment of an initial compensable rating hypertension at any point during the course of the claim. Fenderson v. West, 12 Vet. App. 119 (1999). Therefore, entitlement to an increased rating for hypertension is not warranted, and the claim must be denied.

The preponderance of the evidence now of record is against the Veteran's claim of entitlement to an initial compensable rating for hypertension.


ORDER

Entitlement to an initial compensable rating for hypertension is denied.


REMAND

Left Ankle

Service treatment records show that the Veteran was treated during service in August 1989 for a twisting injury to his left ankle that was diagnosed as a "severe ligament tear." He was put in a cast and crutches for several weeks following the injury and sought follow-up on multiple occasions in 1989 and 1990 for complaints of ongoing swelling and pain in the ankle. 

As noted in the JMR, the November 2008 VA examiner did not review the claims file, but instead noted the history of ligament tear as reported by the Veteran. Thus, upon remand, an addendum from the clinician who provided the November 2008 opinion should be obtained. See Barr v. Nicholson, 21 Vet. App. 303 (2007).

Knees

In its March 2014 decision, the Board noted that the November 2008 VA examiner did not diagnose the Veteran with arthritis despite the finding of bilateral patellar spurring on the X-rays. The parties to the JMR found that the Board did not adequately explain its conclusion that no rating is warranted under DC 5003 for arthritis. Further, the Board did not address the September 2006 Air Force radiologic examination report that found mild osteophytic degenerative change and a small exostosis in the right knee. 

The Board acknowledges that the Veteran has right and left knee arthritis that has been confirmed by X-ray findings. Unfortunately, the November 2008 examination did not specifically discuss painful motion or other considerations in accordance with DeLuca v. Brown, 8 Vet. App. 202 (1995). An examination is required to obtain current findings, and to ensure that the status of the Veteran's disabilities is accurately reflected. See Barr, 21 Vet. App. at 311.

Accordingly, the case is REMANDED for the following action:

1. Return the claims file to the VA physician who provided the November 2008 opinion for review. The claims file, to include a copy of this remand, must be made available for review. The examiner is requested to review the relevant service treatment records as discussed above and provide an addendum to that report that includes an opinion on the question of whether it is at least as likely as not, i.e., a 50 percent or greater probability, that any currently diagnosed left ankle ligament tear with residuals is related to the Veteran's active service.

Complete rationale for all opinions expressed should be provided. If the examiner feels that the requested opinions cannot be rendered without resorting to speculation, the examiner should state whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e. no one could respond given medical science and the known facts) or by a deficiency in the record or the examiner (i.e. additional facts are required, or the examiner does not have the needed knowledge or training).

(If the November 2008 physician is no longer available, the claims folder should be forwarded to another VA physician to provide the addendum opinion requested above. If another examination is required to formulate an opinion as to any question, another examination should be scheduled in order for the question to be answered.)

2. Schedule a VA orthopedic examination to determine the severity of the Veteran's right and left knee disabilities. The claims file, including a copy of this remand, must be made available to the examiner for review in connection with the examination. The examiner should conduct range of motion studies of both knees, including after repetitive movement. The examiner shall provide a specific opinion as to whether there is additional limitation of motion due to weakened movement, excess fatigability, incoordination, pain, or flare ups. The examiner shall secondly address any loss of endurance, coordination, speed, or strength because of symptoms such as pain and equate the level of impairment caused by all such functional losses to an equivalent level of decreased range of extension, stated in degrees.

3. Then, readjudicate the claims on appeal. If either of the benefits sought remain denied, issue a supplemental statement of the case and provide the Veteran and his representative the requisite period of time to respond. The case should then be returned to the Board for further appellate review, if otherwise in order. No action is required of the appellant unless he is notified.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
J. A. MARKEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs